**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Federal Trade Commission,<br><br>  Plaintiff,<br><br> v.<br><br>SuperGoodDeals.com, Inc.; and<br><br>Kevin J. Lipsitz, individually and as an officer of SuperGoodDeals.com, Inc.,<br><br>  Defendants. | Case No. __20-cv-3027__<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

  Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

  1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b; and the Mail, Internet, or Telephone Order Merchandise Rule ("MITOR"), 16 C.F.R. Part 435, to obtain permanent injunctive relief, restitution, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of MITOR.

### JURISDICTION AND VENUE

  2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

  3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1-2), and 15 U.S.C. § 53(b).

**PLAINTIFF**

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces MITOR, 16 C.F.R. Part 435, which requires mail, Internet, or phone-based sellers to have a reasonable basis for advertised shipping times, and, when sellers cannot meet promised shipping times or ship within 30 days, to provide buyers with the option to consent to a delay in shipping or to cancel their orders and receive a prompt refund.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and MITOR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 57b; 16 C.F.R. Part 435.

**DEFENDANTS**

6. Defendant SuperGoodDeals.com, Inc. ("SuperGoodDeals") is a New York corporation with its principal place of business in Staten Island, New York. SuperGoodDeals transacts or has transacted business in this District and throughout the United States.

7. Defendant Kevin J. Lipsitz ("Lipsitz"), is the owner, president, and chief executive officer of SuperGoodDeals. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of SuperGoodDeals, including the acts and practices set forth in this Complaint. Defendant Lipsitz resides in this District and, in connection with the

matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMERCE

8. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### Overview

9. Seeking to capitalize on the recent demand for personal protective equipment ("PPE"), Defendants began marketing masks, respirators, and other PPE through their website in March 2020. Defendants promised consumers that the PPE was "in stock" and would ship the next day.

10. Defendants' next-day shipping promises were, in many cases, false. In fact, Defendants frequently waited weeks to provide "next-day" shipping, failed to inform consumers of the delay, and ignored persistent consumer questions and refund demands.

### Defendants' Shipping Practices

11. SuperGoodDeals markets and sells consumer goods, including charger cables, clothing, jewelry, PPE, and health and beauty products, to consumers throughout the United States and internationally.

12. SuperGoodDeals sells these goods through its website, www.supergooddeals.com.

13. SuperGoodDeals delivers products ordered online, and makes representations about the speed of its order processing.

14. Specifically, SuperGoodDeals tells consumers that its practice (the "Shipping Policy") is to ship paid-for orders within one business day, if not faster.

15. SuperGoodDeals clearly and conspicuously displays its Shipping Policy on its website.

16. For example, SuperGoodDeals tells consumers that if they "pay today," their order will "ship tomorrow." The phrase "Pay Today, Ships Tomorrow" appears throughout supergooddeals.com, including on banner at the top of the website:



17. The "Shipping & Deliveries" page on the SuperGoodDeals website states: "We pride ourselves on fast order processing. Pay Today, Ships Tomorrow!" Defendants also promise to respond to consumer inquires "within 1 business day or less."

18. During the initial months of the COVID-19 pandemic in the United States, many retailers were out of stock of in-demand PPE, such as facemasks and hand sanitizer.

19. In response, SuperGoodDeals began selling PPE. In addition to keeping its prominent "Pay Today, Ships Tomorrow" website header, SuperGoodDeals stated that certain PPE was available, in stock, and ready to ship the next day in accordance with the company's Shipping Policy. For example, below their website header, Defendants claimed masks were "IN STOCK!"

 

20. Additionally, on many product pages, such as the one pictured below, SuperGoodDeals, reiterated that PPE was "In Stock – Pay Today, Ships Tomorrow! Going Fast!"



21. During the early months of quarantine in the United States, obtaining PPE as quickly as possible was paramount for many consumers. PPE was in high demand and difficult to find. As a result, consumers likely relied on the defendants' next-day shipping promises.

22. These promises, however, were false. In numerous instances, SuperGoodDeals generated a United States Postal Services ("USPS") shipping label within one day, but waited weeks to take the ordered products to the post office for shipping.

23. For example, one SuperGoodDeals customer, on March 23, 2020, spent $135 on four 50-packs of disposable masks for child welfare workers making in-home visits. Despite paying extra for overnight shipping, the customer had not received the masks as of March 30.

24. Another customer ordered masks on March 21, 2020 for a family member who is a nurse. That customer paid for two-day shipping, but had not received the masks as of April 4, and had been unable to reach Defendants.

25. A third customer ordered masks on March 31, 2020 for her immunocompromised mother and grandmother, but had not received the masks two weeks later and had been unable to reach Defendants.

26. SuperGoodDeals and Defendant Lipsitz received hundreds of complaints regarding the shipping delays. They received these complaints via emails, phone calls, and chat messages through their website. They did not respond to these messages and, in fact, continued to make the "in stock" and "ships tomorrow" representations regarding PPE described above, when they knew the PPE would not ship in the promised time.

27. In numerous instances, SuperGoodDeals offered its next-day Shipping Policy for a number of its advertised goods, including PPE, without having a reasonable basis for this claim.

28. In numerous instances, SuperGoodDeals did not ship one or more pieces of ordered merchandise, including PPE, within the time represented by its Shipping Policy.

29. In numerous instances, when SuperGoodDeals failed to ship one or more pieces of ordered merchandise, including PPE, within its Shipping Policy, SuperGoodDeals did not offer consumers the opportunity to consent to a delay in shipping or to cancel their orders and receive refunds.

30. In numerous instances, when SuperGoodDeals failed to ship one or more pieces of ordered merchandise, including PPE, within its Shipping Policy, and also failed to offer consumers the required opportunity to either consent to a delay in shipping or to cancel their orders and receive refunds, SuperGoodDeals did not deem the orders cancelled and issue refunds.

31. In numerous instances, when SuperGoodDeals failed to ship one or more pieces of ordered merchandise, including PPE, within its Shipping Policy, consumers demanded cancellation and prompt refunds, despite having not been informed of this option. Even in these cases, SuperGoodDeals did not cancel orders or provide prompt refunds to consumers.

32. Dozens of consumers have complained directly to SuperGoodDeals, Defendant Lipsitz, the Better Business Bureau, and the FTC, particularly during the initial months of the COVID-19 pandemic, that SuperGoodDeals breached its Shipping Policy.

### **SuperGoodDeals's Counterfeit Goods**

33. SuperGoodDeals advertises, markets, solicits orders for, and sells a diverse range of consumer goods.

34. SuperGoodDeals represents many of these goods as "authentic," "certified," or otherwise being of a certain quality or specific brand.

35. For example, SuperGoodDeals advertised and sold Yeti branded vacuum insulated ramblers, stating they were "AUTHENTIC" with a picture of a Yeti branded rambler next to the description:

 

36. In many cases, Defendants' advertisements that goods were "authentic," "certified" or otherwise of a certain quality or specific brand were false.

37. For example, some purportedly "AUTHENTIC" Yeti ramblers were not actually authentic.

38. Numerous consumers complained directly to SuperGoodDeals, Defendant Lipsitz, and the Better Business Bureau that the goods they received did not meet the authentic, certified, or specifically branded representations made by SuperGoodDeals.

**Defendant Lipsitz**

39. At all times addressed in this Complaint, acting alone or in concert with others, Defendant Lipsitz controlled all aspects of SuperGoodDeals, including directly participating in SuperGoodDeals's practices alleged above and reviewing consumer complaints, refund and return demands, and chargeback requests.

40. For example, Defendant Lipsitz filed multiple complaints on behalf of SuperGoodDeals with the Better Business Bureau against credit card companies complaining about the outcome of chargeback determinations.

41. Defendant Lipsitz knew, or should have known, that SuperGoodDeals' claims of "Buy Today, Ships Tomorrow", in many instances, and especially during the COVID pandemic, were false or unsubstantiated and made without a reasonable basis.

42. Additionally, Defendant Lipsitz knew, or should have known, that authentically branded or otherwise, certified goods were, in fact, counterfeit or otherwise not certified.

43. Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things, they have consistently refused to change their "ships tomorrow" guarantee—which is central to their advertising—notwithstanding consistent and known failures to honor the guarantee and because they falsely sell authentic, certified, or specifically branded goods that are, in fact, counterfeit.

## VIOLATIONS OF THE FTC ACT

44. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

45. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I – Section 5 Violations

46. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of goods, including PPE, Defendants have represented, directly or indirectly, expressly or by implication, that they:

    a. will ship purchased goods within one business day, if not faster; and

    b. sell authentic, certified, or specifically branded goods.

47. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 46, Defendants:

    a. failed to ship purchased goods the following business day; or

    b. sold counterfeit, not certified, or not specifically branded goods.

48. Therefore, Defendants' representations set forth in Paragraph 46 are false, misleading, or unsubstantiated, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE MAIL, INTERNET, OR TELEPHONE ORDER MERCHANDISE RULE

49. MITOR, 16 C.F.R. Part 435, prohibits sellers from soliciting any order for the sale of merchandise ordered through the mail, via Internet or by telephone "unless at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer" either "[w]ithin that time clearly and conspicuously stated in any such

9

solicitation; or [i]f no time is clearly and conspicuously stated, within 30 days after receipt of a properly completed order from the buyer." 16 C.F.R. § 435.2(a)(1).

50. "Receipt of a properly completed order" means "where the buyer tenders full or partial payment . . . the time at which the seller receives both said payment and an order from the buyer containing all of the information needed by the seller to process and ship the order." 16 C.F.R. § 435.1(c).

51. "Shipment" means the act of physically placing the merchandise in the possession of a carrier. 16 C.F.R. § 435.1(e).

52. Where a seller is unable to ship merchandise within the seller's advertised time or within 30 days if no time is given, the seller must offer to the buyer "clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund." 16 C.F.R. § 435.2(b)(1).

   a. Any such offer "shall be made within a reasonable time after the seller first becomes aware of its inability to ship." 16 C.F.R. § 435.2(b)(1).

   b. The offer must fully inform the buyer of the buyer's right to cancel and provide a definite revised shipping date or inform the buyer that the seller cannot make any representation regarding the length of the delay. 16 C.F.R. § 435.2(b)(1)(i).

53. A seller must "deem an order canceled and . . . make a prompt refund to the buyer whenever the seller receives, prior to the time of shipment, notification from the buyer cancelling the order pursuant to any option [under MITOR] . . . [or] [t]he seller fails to offer the option [to consent to a delay or cancel required by § 435.2(b)(1)] and has not shipped the merchandise" within the time required by MITOR. 16 C.F.R. § 435.2(c), (c)(1), (c)(5).

54. Pursuant to Section 18 of the FTC Act, 15 U.S.C. § 57a(d)(3), and 16 C.F.R. § 435.2, a violation of MITOR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II – Violations of MITOR

55. In numerous instances, when Defendants:

   a. represented they would ship purchased goods within the next business day, they did not have a reasonable basis to expect to ship the goods the next business day;

   b. failed to ship orders within the timeframe required by MITOR, they also failed to offer customers the opportunity to consent to a delay in shipping or to cancel their order and receive a refund;

   c. failed to ship orders within the timeframe required by MITOR and failed to offer consumers the opportunity to consent to a delay in shipping or to cancel their order, they did not cancel those orders or provide consumers a refund;

   d. received cancellation and refund requests from consumers pursuant to any option under MITOR, they did not deem those orders cancelled or provide a prompt refund.

56. Defendants' practices as alleged in Paragraph 55 violate MITOR, 16 C.F.R. § 435.2(a), (b), and (c), and therefore are unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

### CONSUMER INJURY

57. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and MITOR. Additionally,

Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## **THIS COURT'S POWER TO GRANT RELIEF**

58. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

59. Section 19 of the FTC Act, 15 U.S.C. § 57b, and MITOR authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of MITOR, including the rescission or reformation of contracts and the refund of money.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b, MITOR, and the Court's own equitable powers, requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

B. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and MITOR, including restitution, rescission or reformation of contracts, the refund of money or return of property, the payment of

damages, and public notification respecting the rule violation or the unfair or deceptive act or practice; and

      C.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated: July 8, 2020

   */s/ Savvas S. Diacosavvas*
SAVVAS S. DIACOSAVVAS
BRIAN M. WELKE, *pro hac vice pending*
EVAN M. MENDELSON, *pro hac vice pending*
Federal Trade Commission
600 Pennsylvania Avenue NW, CC-9528
Washington, DC 20580
(212) 607-2809; sdiacosavvas@ftc.gov (Diacosavvas)
(202) 326-2897; bwelke@ftc.gov (Welke)
(202) 326-3320; emendelson@ftc.gov (Mendelson)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION